UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

**Caption in Compliance with D.N.J. LBR 9004-1(b)**

**NORGAARD, O'BOYLE & HANNON**
184 Grand Avenue
Englewood, New Jersey 07631
Telephone Number (201) 871-1333
Facsimile Number (201) 871-3161
Attorneys for Debtor
By: John O'Boyle, Esq. - (JO-6337)

| In Re: | | Case No.: | 19-22958 |
|---|---|---|---|
| Marianne McElroy and Robert M. McElroy | | Judge: | CMG |
| | | Chapter: | 13 |

## CHAPTER 13 DEBTOR'S CERTIFICATION IN OPPOSITION

The debtor in this case opposes the following **(choose one)**:

1. ☒ Motion for Relief from the Automatic Stay filed by _____ Midfirst Bank _____, creditor,

   A hearing has been scheduled for _____ 8/7/2024 _____, at ___ 9am ___.

   ☐ Motion to Dismiss filed by the Chapter 13 Trustee.

   A hearing has been scheduled for _____, at _____.

   ☐ Certification of Default filed by _____,

   I am requesting a hearing be scheduled on this matter.

2. I oppose the above matter for the following reasons **(choose one)**:

   ☐ Payments have been made in the amount of $ _____, but have not been accounted for. Documentation in support is attached.

☐ Payments have not been made for the following reasons and debtor proposes

repayment as follows **(explain your answer):**

☒ Other **(explain your answer):**

We dispute the amount of arrears owed, we made 3 payments recently that
clearded our account last week. We also dispute the payment history as well. (See
Attached Supplemental Certification with Exhibits)

3.   This certification is being made in an effort to resolve the issues raised in the certification

of default or motion.

4.   I certify under penalty of perjury that the above is true.

Date: 8/2/2024 _____          /s/ Marianne McElroy _____
                                         Debtor's Signature

Date: 8/2/2024 _____          /s/ Robert M. McElroy _____
                                         Debtor's Signature

**NOTES:**

1.   Under D.N.J. LBR 4001-1(b)(1), this form must be filed with the court and served on the Chapter
     13 Trustee and creditor, if applicable not later than 7 days before the date of the hearing if filed in
     opposition to a Motion for Relief from the Automatic Stay or Chapter 13 Trustee's Motion to
     Dismiss.

2.   Under D.N.J. 4001-1 (b)(2), this form must be filed with the court and served on the Chapter 13
     Trustee and creditor, if applicable not later than 14 days after the filing of a Certification of
     Default.

*rev.8/1/15*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**
Caption in Compliance with D.N.J. LBR 9004-1(b)
**NORGAARD, O'BOYLE & HANNON**
184 Grand Avenue
Englewood, New Jersey 07631
Phone: (201) 871-1333
Fax: (201) 871-3161
Counsel to Debtors
By: John O'Boyle, Esq. (JO-6337)
    _joboyle@norgaardfirm.com_

Chapter 13

In Re:

Case No. 19-22958(CMG)

MARIANNE McELROY and
    ROBERT McELROY,

Hearing Date:  August 7, 2024

                                        Debtors.

---

### SUPPLEMENTAL CERTIFICATION OF DEBTOR IN RESPONSE TO MOTION FOR RELIEF FROM STAY FILED BY MIDFIRST BANK

Marianne McElroy and Robert McElroy, of full age, hereby certifies as follows:

1.     We are the debtors in the above-captioned case. We make this Certification for the purpose of supplementing our opposition to the Motion for Relief filed by secured creditor MidFirst Bank ("MidFirst").

2.     Per our filed opposition, we are objecting to the filed motion for relief because the due dates and payment amounts are not accurate based on the instructions we received with the August, 2021 Partial Claim agreement we entered into with MidFirst. Attached as **Exhibit A** is a copy of the August 23, 2021 Partial Claim agreement with the cover letter and instructions for same. Please refer to the sentence in bold on the 2nd page that states as a reminder, the next payment due on the existing FHA insured mortgage in the amount of $1447.01 and is due on or before October 1, 2021.  That sentence confirms the payments included on the Partial Claim agreement are through and including the September, 2021 payment with October, 2021 being the 1st payment due post the

Partial Claim agreement.  The payment history filed with motion for relief incorrectly states that payments in the Partial Claim agreement include payments through November, 2021, which is not accurate.

3.      Additionally, MidFirst Bank filed an Amended Proof of Claim on March 10, 2022, post the Partial Claim agreement,  because the payments included in the Partial Claim agreement included a portion of the pre-petition arrears as well as some post-petition payments the proof of claim had to be amended.   Attached hereto as **Exhibit B** is a portion of the support documents provided with the Amended Claim.  Please note that the payment history filed with the Amended Claim states that payments through January, 2022 are included in the Partial Claim Agreement and that the February, 2022 payment is the 1st payment post the Partial Claim Agreement.  Also, per the escrow account statement filed with the amended claim the payment amount stated in the Partial Claim Agreement instructions is confirmed, as that same monthly payment amount of $1447.01 is noted as the payment amount prior to the December, 2021 payment change.

4.      MidFirst had filed a motion for relief from the automatic stay back on March 30, 2023 (Doc127).  At that time of the filing of that motion. we had contacted MidFirst counsel to advise of these same inconsistencies with the due dates.  Prior to filing any opposition to same, the motion for relief was withdrawn on May 16, 2023 (See Doc.129).  After the motion for relief was withdrawn we had not heard from Midfirst or counsel until the filing of the instant motion on July 9, 2024.

5.      Midfirst bank's motion for relief is clearly not accurate and is inconsistent with its' own filed Amended Proof of Claim as well as the Partial Claim agreement.   We would request that the Court direct Midfirst bank to provide a corrected and updated payment history starting with the October 1, 2021 payment in the amount of $1,447.01. In order to determine the correct and accurate

amount due.

We certify that the foregoing statements are true. We are aware that if the foregoing statements are willfully false, we am subject to punishment.

Dated:  August 2, 2024                    /s/ Marianne McElroy
                                          Marianne McElroy

Dated: August 2, 2024                     /s/ Robert McElroy
                                          Robert McElroy

# Exhibit A



**MIDLAND MORTGAGE**
*A division of MidFirst Bank*

August 23, 2021

ROBERT MCELROY &
MARIANNE MCELROY
75 BAYWOOD BLVD
BRICK NJ  08723-6961

# Read, sign and return.

Please return the enclosed documents to us by 9/24/2021.
Property Address:
75 BAYWOOD BLVD
BRICK, NJ  08723-6961

Dear Homeowner:

Please find the enclosed Partial Claim documents for your review and signature. The U.S. Department of Housing and Urban Development ("HUD") Partial Claim consists of a Subordinate Note and a security instrument, which may be titled Subordinate Mortgage, Subordinate Security Deed or Subordinate Deed of Trust, between you and HUD. The HUD Partial Claim is an interest-free loan from HUD and is owed to HUD. The Partial Claim does not become due until the earlier of: (i) payoff or refinance of the existing FHA insured Mortgage loan; (ii) sale of the property; or (iii) maturity of the existing FHA insured Mortgage loan.

The HUD Partial Claim includes the following items and amounts:

| Items Included in HUD Partial Claim | Amounts Included in HUD Partial Claim |
|---|---|
| Past Due Payments | +$32,711.05 |
| Foreclosure Attorney Fees and Costs Now Due | +$0.00 |
| Principal | +$0.00 |
| (Less) Suspense Funds | -$0.00 |
| **Total Partial Claim** | $32,711.05 |

Enclosed are two (2) copies of the HUD Partial Claim Subordinate Note and a security instrument for your review and signature. To complete the permanent agreement, all borrowers must sign the documents according to the instructions on the next page in front of a notary public and return both fully signed originals of the HUD Partial Claim documents at the address listed on the instructions. By signing the attached documents, you are acknowledging that you have read, understand, and agree to the terms of the HUD Partial Claim, including the terms outlined above. Upon receipt and our acceptance of the fully executed documents, we will waive all outstanding late charges due through the effective date of your plan.

MM Loan Number:  48443384

**The signed documents must be returned by 9/24/2021.**

Please be aware that failure to return all required documents may disqualify you from the program. In such a case, the collection and/ or foreclosure process may proceed without further notice to you. Please read the plan documents carefully, make sure you understand the modified terms, and contact us with any questions.

**As a reminder, the next payment on the existing FHA insured mortgage in the amount of $1,447.01 is due on or before 10/1/2021.**

If you have questions about this, please call us at 1-800-552-3000 Monday to Friday 8 a.m. to 7 p.m. or Saturday 9 a.m. to 1 p.m. Central time.

Sincerely,

Mortgage Assistance Center
Midland Mortgage - A Division of MidFirst Bank

**Notice:** If you have received a bankruptcy discharge of the debt secured by the Mortgage/Deed of Trust, or you are currently in bankruptcy under the protection of the automatic stay, this letter is not an attempt to collect the debt from you personally and is for informational purposes only. If your loan was in default at the time MidFirst Bank obtained it, and you have not filed bankruptcy or received a discharge of the debt secured by the Mortgage/Deed of Trust, we are required to advise you that this communication is from a debt collector, this is an attempt to collect a debt, and any information obtained will be used for that purpose.
**Notice to Connecticut and North Carolina Residents:** The purpose of this communication is to collect a debt.
**Notice to Vermont Residents:** This is an attempt to collect a debt and any information obtained will be used for that purpose.

MM Loan Number: 48443384



# /// MIDLAND MORTGAGE
### A division of MidFirst Bank



# Read These Instructions Before Signing Your Plan Documents

## Helpful tips and reminders:

- ✓ Please follow these directions exactly or your mortgage assistance plan could be delayed!
- ✓ Two sets of the Partial Claim Agreement are enclosed.
  Both will be returned to Midland using the mailing information below.
- ✓ USE BLACK INK ONLY, or your plan documents may be delayed or rejected.
- ✓ Do not change the documents in any way. Please call 800-552-3000 with any questions about the documents or the details of your mortgage assistance plan.

## Instructions for document signers:

- ☐ Sign all copies of the Partial Claim Agreements in front of a notary.
- ☐ Sign names in black ink on all sets of documents exactly as they appear - don't forget middle initials, middle names, Jr./Sr., etc.
- ☐ Initial each page and sign both sets of documents in all places where names appear.

## Instructions for the notary:

- ☐ Use black ink for the notary stamp and signature.
- ☐ Complete the date of acknowledgement.
- ☐ List your notary expiration date.
- ☐ Include your notary stamp and/or seal on the acknowledgement pages.
- ☐ Ensure the notary seal is in a blank space and does not cover text or signatures.

| *By Overnight Courier (UPS, FedEx, Etc.)* | *By US Mail* |
| --- | --- |
| Midland Mortgage - A Division of MidFirst Bank | Midland Mortgage - A Division of MidFirst Bank |
| Attn: MAC | Attn: MAC |
| 999 N.W. Grand Boulevard, Suite 100 | P.O. Box 268806 |
| Oklahoma City, OK 73118 | Oklahoma City, OK 73126-8806 |

MM Loan Number: 48443384

When Recorded Mail to:
FIRST AMERICAN TITLE CO.
FAMS-DTO RECORDING
3 FIRST AMERICAN WAY
SANTA ANA, CA 92707-991

Document Prepared by:
John Boatman
Midland Mortgage - A Division of MidFirst Bank
999 N.W. Grand Boulevard, Suite 100
Oklahoma City, OK 73118-6116
1-800-552-3000

      

FHA Case Number: **351-2529011703**

## SUBORDINATE MORTGAGE

THIS SUBORDINATE MORTGAGE ("Security Instrument") is given on **August 23, 2021**. The mortgagors are **ROBERT MCELROY & MARIANNE MCELROY** whose address is **75 BAYWOOD BLVD BRICK, NJ 08723-6961** ("Borrower"). This Security Instrument is given to the **Secretary of Housing and Urban Development** whose principal office and mailing address is **451 Seventh Street, SW, Washington, DC 20410** ("Lender"). Borrower owes Lender the principal sum of **thirty-two-thousand-seven-hundred-eleven dollars and five cents (US $32,711.05)**. This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for the full debt, if not paid earlier, due and payable on **7/1/2047**. This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums advanced to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and

Page 1 of the Subordinate Mortgage

<u>Borrower Initial Lines</u>

_____    _____

_* Please add the appropriate number of initial lines for each signatory over 4_

the Note. This Security Instrument and the Note secured hereby are subject to modification (including changes in the due date and other terms and conditions) as defined in New Jersey Laws 1985, ch 353 section 1 *et seq*, and upon such modification, shall have the benefit of the lien priority provisions of that law. The maximum principal amount secured by this Security Instrument is $32,711.05. For these purposes, Borrower does hereby mortgage, grant and convey to Lender the following described property located in **OCEAN** County, New Jersey:

**See Exhibit "A" attached hereto and made a part hereof.**

**Tax ID # 00308.000000001.0000**

which has the address of: **75 BAYWOOD BLVD  BRICK, NJ  08723-6961** ("Property Address");

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property".

WHEREAS, Borrowers delivered to Lender a mortgage dated **9/27/1991** encumbering the land, improvements and other items of mortgage property as more particularly set forth in the mortgage which was recorded in the Office of Clerk, OCEAN County on **10/2/1991**, in Instrument Number: 111694, in the principal sum of **$112,887.00** and a note dated **9/27/1991** from Borrowers to Lender in the principal sum of **$112,887.00**, which note is secured by the Mortgage.

BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

**UNIFORM COVENANTS.** Borrower and Lender covenant and agree as follows:

1. **Payment of Principal.**

   Borrower shall pay when due the principal of the debt evidenced by the Note.

2. **Borrower Not Released; Forbearance By Lender Not a Waiver.**

   Extension of the time of payment of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to

Page 2 of the Subordinate Mortgage

Borrower Initial Lines

\_\_\_\_\_    \_\_\_\_\_

\_\_\_\_\_    \_\_\_\_\_

\* Please add the appropriate number of initial lines for each signatory over 4

release the liability of the original Borrower or Borrower's successor in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

3. **Successors and Assigns Bound; Joint and Several Liability; Co-signers.**

The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the term of this Security Instrument or the note without that Borrower's consent.

4. **Notices.**

Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Notice to any one Borrower shall serve as notice to all Borrowers unless state law expressly prohibits same. Any notice to Lender shall be given by first class mail to: **Department of Housing and Urban Development, Attn: Single Family Notes Branch, 451 Seventh Street, SW, Washington, DC 20410 or any address Lender designates** by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

5. **Governing Law; Severability.**

This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end, the provisions of the Security Instrument and the Note are declared to be severable.

6. **Borrower's Copy.**

Borrower shall be given one conformed copy of the Note and of this Security Instrument.

Page 3 of the Subordinate Mortgage

Borrower Initial Lines

_____   _____

* Please add the appropriate number of initial lines for each signatory over 4

**NON-UNIFORM COVENANTS.** Borrower and Lender further covenant and agree as follows:

7. <u>**Acceleration; Remedies.**</u>

Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument. The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure; and any other disclosure required under the Fair Foreclosure Act, codified at §§ 2A:50-53 et seq. of the New Jersey Statutes, or other Applicable Law. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 7, including, but not limited to, attorneys' fees and costs of title evidence permitted by Rules of Court.

**If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under the Paragraph 7 of the Subordinate Note, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 USC 3751 et seq) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to Lender under this paragraph or applicable law.**

8. <u>**Release.**</u>

Upon payment of all sums secured by this Security Instrument, Lender shall cancel this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs. Lender may charge such person or persons a fee for reconveying the Property only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under applicable law.

9. <u>**No Claim of Credit for Taxes.**</u>

Borrower will not make deduction from or claim credit on the principal or interest secured by this Security Instrument by reason of any governmental taxes, assessments or charges. Borrower will not claim any deduction from the taxable value of the Property by reason of this Security Instrument.

<u>Borrower Initial Lines</u>

_____    _____
_____    _____

\* Please add the appropriate number of initial lines for each signatory over 4

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.  IN WITNESS WHEREOF, Borrower has executed this Security Instrument.

BORROWER

_____

ROBERT MCELROY

_____

MARIANNE MCELROY

## Acknowledgement

STATE OF New Jersey                              )
                                                 ) SS:
COUNTY OF **OCEAN**                              )

On the _____ day of _____, 20___, before me, the undersigned, a notary public in and for said state, personally appeared **ROBERT MCELROY & MARIANNE MCELROY,** personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is  (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s) or the person upon behalf of which the individual(s) acted, executed the instrument.

In witness whereof, I hereunto set my hand and official seal.

_____                County of Residence: _____

Notary Public                                   Commission Number: _____

_____                My Commission Expires:_____

Printed name of notary

Page 5 of the Subordinate Mortgage

## Exhibit "A"

BEGINNING AT A POINT, SAID BEGINNING POINT BEING THE POINT OF INTERSECTION FORMED BY THE SOUTHERLY RIGHT-OF-WAY LINE OF BAYWOOD BOULEVARD (100' WIDE) AND THE EASTERLY  RIGHT-OF-WAY LINE OF GLENN DRIVE (60' WIDE), AS SHOWN ON A MAP ENTITLED, "MINOR SUBDIVISION OF BLOCK 308.16, LOTS 1-6, BRICK TOWNSHIP, OCEAN COUNTY, N.J.," AND RUNNING; THENCE,

1. SOUTHEASTERLY ALONG THE AFORESAID SOUTHERLY RIGHT-OF-WAY LINE OF BAYWOOD BOULEVARD ON A COURSE OF S 41° 54' 00" E (SOUTH FORTY ONE DEGREES FIFTY FOUR MINUTES ZERO SECONDS EAST) A DISTANCE OF 70.10' (SEVENTY AND TEN ONE HUNDREDTHS FEET) TO A POINT, SAID POINT BEING THE NORTHWESTERLY LOT CORNER OF LOT 5 BLOCK 308.16, AND RUNNING; THENCE,

2. SOUTHWESTERLY ALONG THE NORTHWESTERLY LOT LINE OF LOT 5 BLOCK 308.16 ON A COURSE S 48°06' W (SOUTH FORTY EIGHT DEGREES SIX MINUTES WEST) A DISTANCE OF 100.00' (ONE HUNDRED FEET) TO A POINT BEING IN THE NORTHERLY LOT LINE OF LOT 11 BLOCK 308.16 AND RUNNING; THENCE,

3. NORTHWESTERLY PARTLY ALONG THE NORTHERLY LOT LINE OF LOT 11 BLOCK 308.16 ON A COURSE OF N 41°54' 00" W (NORTH FORTY ONE DEGREES FIFTY FOUR MINUTES ZERO SECONDS WEST) A DISTANCE OF 70.10' (SEVENTY AND TEN ONE HUNDREDTHS FEET) TO A POINT IN THE SOUTHERLY RIGHT-OF-WAY LINE OF GLENN DRIVE, AND RUNNING; THENCE,

4. NORTHEASTERLY ALONG THE AFORESAID SOUTHERLY RIGHT-OF-WAY LINE OF GLENN DRIVE ON A COURSE OF N 48°06' 00" E (NORTH FORTY EIGHT DREGREES SIX MINUTES ZERO SECONDS EAST) A DISTANCE OF 100.00' (ONE HUNDRED FEET) TO THE POINT OR PLACE BEGINNING.
CONTAINING 7,010.00 S.F.T

BEING LOT 1 BLOCK 308.16 AS SHOWN ON MAP ENTITLED, "MINOR SUBDIVISION OF BLOCK 308.16 LOTS 1-6, BRICK TOWNSHIP, OCEAN COUNTY, NEW JERSEY," PREPARED BY LANDFORM TECHNOLOGY, INC., FILED IN THE OCEAN COUNTY CLERK'S OFFICE 6/19/89 AS MAP NO. I-2183

ALSO BEING KNOWN AS LOTS 1, 2, 3 AND PART OF 4 BLOCK 16, ON MAP ENTITLED "BAYWOOD BARNEGAT BAY, BRICK TOWNSHIP, OCEAN COUNTY, N.J., SECTION 1," FILED IN THE OCEAN COUNTY CLERK'S OFFICE 4/30/52 AS MAP NO. C-288

Parcel # 00308.000000001.0000

Tax ID# 0030.3.000000001.0000

FHA Case Number: 351-2529011703

 

## SUBORDINATE NOTE

Date: August 23, 2021
Property Address: 75 BAYWOOD BLVD
BRICK, NJ 08723-6961

### 1. Parties

"Borrower" means each person signing at the end of this Note, and the Person's successors and assigns. "Secretary" or "Lender" means the Secretary of Housing and Urban Development and its successors and assigns.

### 2. Borrower's Promise to Pay

In return for a loan received from Lender, Borrower promises to pay the principal sum of **thirty-two-thousand-seven-hundred-eleven dollars and five cents** (US $32,711.05) to the order of the Lender.

### 3. Promise to Pay Secured

Borrower's promise to pay is secured by a mortgage, deed of trust, or similar security instrument that is dated the same date as this Note and called the "Security Instrument." This Security Instrument protects the Lender from losses which might result if Borrower defaults under this Note.

### 4. Manner of Payment

A. Time -
On **7/1/2047** or, if earlier, when the first of the following events occurs:

    i.   Borrower has paid in full all amounts due under the primary Note and related mortgage, deed of trust or similar Security Instruments insured by the Secretary, or

    ii.   The maturity date of the primary Note has been accelerated, or

    iii.   Borrower has transferred title to the Property by sale, or

    iv.   The primary Note and related mortgage, deed of trust, or similar Security Instrument are no longer insured by the Secretary.

B. Place -
Payment shall be made at the Office of Housing FHA-Comptroller, Director of Mortgage Insurance Accounting and Servicing, c/o NOVAD Management Consulting Shepherd Mall 2401 NW 23rd Street, Suite 1A Oklahoma City, OK 73107 or any such other place as Lender may designate in writing by notice to Borrower.

C. Default -
If Borrower does not pay the amount due as set forth in this paragraph, Borrower will be in default. If Borrower is in default, the Lender may require immediate payment of the full amount due which has not been paid without any further notice.

Page 1 of the Subordinate Note

D.      No Waiver by Lender -
Even if, at a time when Borrower is in default, Lender does not require immediate payment in full, Lender will still have the right to do so if Borrower is in default at a later time.

E.      Payment of Lender's Costs and Expenses -
If Lender has required Borrower to pay immediately in full, Lender will have the right to require Borrower to pay Lender for all costs and expenses in enforcing this Note to the extent not prohibited by applicable law.  Such expenses include but are not limited to, reasonable attorney fees.

### 5.  Borrower's Right to Repay

Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty.  If Borrower makes a partial prepayment, there will be no changes in the due date or in the amount of the monthly payment unless Lender agrees in writing to those changes.

### 6.  Waivers

Borrower and any other person who has obligations under this Note waive the rights to presentment and notice of dishonor.  "Presentment" means the right to require Lender to demand payment of the amounts due.  "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

### 7.  Obligations of Persons Under This Note

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed.  Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things.  Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note.  Lender may enforce its rights under this Note against each person individually or against all signatories together.  Any one person signing this Note may be required to pay all of the amounts owed under this Note.

BY SIGNING BELOW, Borrower(s) accepts and agrees to the terms and covenants contained in this Note.

BORROWER

_____
ROBERT MCELROY

_____
DATE

_____
MARIANNE MCELROY

_____
DATE

Page 3 of the Subordinate Note



## CERTIFICATION OF CONDITION

Loan Number:    48443384

Property Address:   75 BAYWOOD BLVD
BRICK, NJ  08723-6961

By signing this, I (we) certify that the property located at the address identified above, which is the subject of the loan referenced above, has no physical conditions that will adversely affect the continued use of the property or interfere with my (our) ability to maintain the monthly mortgage payments.

BORROWER

_____        _____
ROBERT MCELROY                                 DATE

_____        _____
MARIANNE MCELROY                              DATE

Loan ID: 3384



**MIDLAND MORTGAGE**

*A division of MidFirst Bank*

August 23, 2021

ROBERT MCELROY & MARIANNE MCELROY
75 BAYWOOD BLVD
BRICK, NJ  08723-6961

## ERRORS AND OMISSIONS COMPLIANCE AGREEMENT

In connection with an agreement between Borrower and the Department of Housing and Urban Development ("HUD"), evidenced by a Subordinate Note and Subordinate Mortgage or Subordinate Deed of Trust ("Partial Claim"), Borrower agrees that if requested by HUD or HUD's authorized agent or representative, or the servicer of the Loan (collectively referred to as "Lender"), the Borrower will correct, or cooperate in the correction of any clerical errors made in any document or agreement entered into in connection with the Partial Claim and/or execute new or additional documents, if deemed necessary or desirable in the reasonable discretion of the Lender, to enable Lender to secure its interest created by the Partial Claim in the real property securing the Loan or to sell, convey, seek guaranty or market the Loan to any entity, including without limitation, the Federal National Mortgage Association, the Federal Home Loan Mortgage Corporation, the Government National Mortgage Association, the Federal Housing Authority, the Department of Veterans Affairs or any municipal bond authority.

The Borrower agrees to comply with all such requests made by the Lender within 30 days of receipt of written request from the Lender. Borrower agrees to assume all costs that may be incurred by the Lender, including without limitation, actual expenses, legal fees and marketing losses, as a result of the Borrower's failure to comply with all such requests within such 30 day time period.

The Borrower makes this agreement in order to assure the documents and agreements executed in connection with the Partial Claim will conform to and be acceptable in the marketplace in the event the Loan is transferred, conveyed, guaranteed or marketed by the Lender and to secure Lender's interest created by the Partial Claim in the real property securing the Loan.

BORROWER

| | |
|---|---|
| _____ | _____ |
| ROBERT MCELROY | DATE |
| _____ | _____ |
| MARIANNE MCELROY | DATE |

Loan ID: 3384

# Mortgage Assistance Plan Evaluation Notice

| Mortgagor | ROBERT MCELROY | Loan | 48443384 |
|---|---|---|---|
| Co-Mortgagor | MARIANNE MCELROY | | |
| Mailing Address | 75 BAYWOOD BLVD BRICK, NJ 08723-6961 | Property Address | 75 BAYWOOD BLVD BRICK, NJ 08723-6961 |

## Congratulations on your plan approval!

You've completed the mortgage assistance application process and are approved for the following plan. To accept the assistance plan offered, please follow the instructions included with your enclosed plan documents.

| Assistance Plan Type | Explanation |
|---|---|
| FHA Covid-19 Emergency PC | You qualified for this mortgage assistance program. |

### Other plans for which you were evaluated

There were several other plans for which you did not qualify. Below is the list of mortgage assistance plans for which your application was evaluated, and the reason why you did not qualify for each plan. Each determination was based upon your individual circumstances and the investor and insurer guidelines that govern your loan.

| Assistance Plan Type | Explanation |
|---|---|
| COVID-19 Owner-Occupant Loan Mod | Investor/Insurer Hierarchy. You do not qualify for this assistance plan because you qualify for a plan that precedes it in the hierarchy established by your investor or insurer. |
| COVID-19 Combination Partial Claim and Loan Mod | Investor/Insurer Hierarchy. You do not qualify for this assistance plan because you qualify for a plan that precedes it in the hierarchy established by your investor or insurer. |
| COVID-19 FHA HAMP Modification | Investor/Insurer Hierarchy. You do not qualify for this assistance plan because you qualify for a plan that precedes it in the hierarchy established by your investor or insurer. |
| COVID-19 Non-Occupant Loan Mod | Investor/Insurer Hierarchy. You do not qualify for this assistance plan because you qualify for a plan that precedes it in the hierarchy established by your investor or insurer. |

### Appealing a plan decision

You have **14 days** from the date of this letter to request an appeal of your mortgage assistance plan decision. To appeal your plan decision, please use the contact information provided below to mail, fax, or email an explanation of why you believe you may qualify for a different plan and the necessary documentation to support your appeal. Once your appeal is received, we will evaluate it and make a determination no later than 30 days from the date of your appeal, and the deadline to accept our offer will be extended until the appeal has been resolved. During the appeal process, any unpaid interest or other unpaid amounts will continue to accrue.

| Fax | Email | Mail |
|---|---|---|
| 1-405-767-5815 | mac@midfirst.com | Midland Mortgage - A Division of MidFirst Bank Attn: MAC P.O. Box 268806 Oklahoma City, OK 73126-8806 |

### Call us with questions

Call us at 1-800-552-3000 if you have any questions or would like to check the status of your account. We can assist you Monday to Friday 8 a.m. to 7 p.m. or Saturday 9 a.m. to 1 p.m. Central time Escalations

### Escalations

If you believe your application for mortgage assistance has been denied due to an improper analysis of your information or in violation of HUD Loss Mitigation policies, you may submit a request in writing using the following methods below:

You can contact us by **fax** 1-405-767-5815 or **email** mac@midfirst.com or by **mail** at Midland Mortgage, P.O. Box 268806, Oklahoma City, OK 73126-8806.

Notice: If you fail to comply with the terms included with your plan documents and do not make other arrangements, your loan will be enforced according to its original terms, which could include foreclosure. Additionally, your loan could be included in a Single Family Loan Sale Program administered by the Federal Housing Administration (FHA).

Exhibit B

Case 19-22958-CMG    Claim 10 Part 3    Filed 03/10/22    Desc Exhibit 410a Payment
History    Page 1 of 6

Case 19-22958-CMG    Claim 10 Part 3    Filed 03/10/22    Desc Exhibit 410a Payment
History    Page 2 of 6

Case 19-22958-CMG    Claim 10 Part 3    Filed 03/10/22    Desc Exhibit 410a Payment
History    Page 3 of 6

| Date | Contractual Payment Amount | Funds Received | Amount Incurred | Description | Contractual Due Date | Prin. Int & Esc. Past Due Balance | Amount to Principal | Amount to Interest | Amount to Escrow | Amount to Fees or Charges | Unapplied Funds | Principal Balance | Accrued Interest Balance | Escrow Balance | Fees/Charges Balance | Unapplied Funds Balance |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

Case 19-22958-CMG    Claim 10 Part 3    Filed 03/10/22    Desc Exhibit 410a Payment
History    Page 4 of 6

Case 19-22958-CMG    Claim 10 Part 3    Filed 03/10/22    Desc Exhibit 410a Payment
History    Page 6 of 6

| Date | Contractual Payment Amount | Funds Received | Amount Uncerted | Description | Contractual Due Date | Prin, Int & Esc Post Due Balance | Amount to Principal | Amount to Interest | Amount to Escrow | Amount to Fees or Charges | Unapplied Funds | Principal Balance | Accound Interest Balance | Escrow Balance | Fees/ Charges Balance | Unapplied Funds Balance |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1/15/2020 | | | -4.80 | Paid Expense advance | | 0.00 | | | | -4.80 | -4.80 | 140050.40 | | 826.38 | 9895.92 | 444.79 |
| 1/15/2020 | | | -844.79 | Pmt Late Charges | | 0.00 | | | | -844.79 | -844.79 | 140050.40 | | 826.38 | 9051.13 | 0.00 |
| 1/15/2020 | | | | Taxes Paid | | 0.00 | | | -1475.38 | | | 140050.40 | | -649.70 | 9051.13 | 0.00 |

**///  MIDLAND**
**MORTGAGE**
A division of MidFirst Bank

P.O. Box 26648
Oklahoma City, OK 73126-0648

Loan number: ▮▮▮▮▮▮▮
75 BAYWOOD BLVD
BRICK NJ 08723
Date Reviewed: 09/14/2021
Next Escrow Cycle: Dec 2021 - Nov 2022

ROBERT M MCELROY
MARIANNE MCELROY
75 BAYWOOD BLVD
BRICK NJ 08723

# Escrow Account Statement

| | |
|---|---|
| **Why am I receiving this statement?** | Midland Mortgage, a division of MidFirst Bank ("Midland") recently reviewed your escrow account. Part of your monthly mortgage loan payment ("mortgage payment") goes into your escrow account to pay recurring expenses on your behalf such as property taxes, insurance, and other items required by your loan documents. This statement shows how those expenses affect the amount of your monthly mortgage payment. |
| **Why did my payment change?** | The most common reason escrow payments change is an increase or decrease in the amounts you pay in property taxes and homeowner's insurance. **If you have questions about a change in your tax or insurance bills, please contact your local taxing authority or insurance agent.** |
| **What do I need to do next?** | Please review your escrow statement below, which explains how the shortage will impact your monthly payment. The last page of this statement includes helpful answers to common escrow questions. |
| **Important Notices** | If you have received a bankruptcy discharge of the debt secured by the Mortgage/Deed of Trust, or you are currently in bankruptcy under the protection of the automatic stay, this letter is not an attempt to collect the debt from you personally and is for informational purposes only.  If your loan was in default at the time MidFirst Bank obtained it, and you have not filed bankruptcy or received a discharge of the debt secured by the Mortgage/Deed of Trust, we are required to advise you that this communication is from a debt collector, this is an attempt to collect a debt, and any information obtained will be used for that purpose. |

Notice to Connecticut and North Carolina Residents:  The purpose of this communication is to collect a debt.

Notice to Vermont Residents:  This is an attempt to collect a debt and any information obtained will be used for that purpose.

## New Monthly Mortgage Payment

The amount needed in your escrow account to pay your expenses, such as property taxes or homeowner's insurance, has changed. Because of this, **your mortgage payment has changed to $1,437.93 beginning with the 12/1/2021** mortgage payment.

| Monthly Payment | Old Payment | New Payment | Change |
|---|---|---|---|
| Principal & Interest | $805.69 | $805.69 | None |
| Escrow Deposit plus Escrow Shortage or Surplus | $641.32 | $632.24 | Decrease |
| **Total Monthly Mortgage Payment** | **$1,447.01** | **$1,437.93** | **Decrease** |

## Escrow Bills and Escrow Payment

The following chart shows the breakdown of the amounts we anticipated to be paid from your escrow account since the last review and the new amounts we expect to pay from your escrow account between December 2021 and November 2022.

| Escrow Bills | Old Amount | New Amount | Change |
|---|---|---|---|
| Homeowners Ins | $1,443.64 | $1,557.57 | Increase |
| City/Town Tax | $5,913.98 | $5,956.26 | Increase |
| **Annual Total** | **$7,357.62** | **$7,513.83** | **Increase** |

## Required Minimum Balance

The required minimum balance is between 0 and 2 new monthly escrow payments and is determined by the terms of your loan documents, federal and/or state law. The new required minimum balance in your escrow account is $1,252.30

| | |
|---|---|
| Your lowest expected escrow balance: | $1,179.21 |
| Your required minimum balance | $1,252.30 |
| **The difference creates a shortage in your escrow account of:** | **-$73.09** |

Because the lowest expected escrow balance is less than the required minimum balance, there is a shortage of -$73.09 in your escrow account.  **This shortage is illustrated in the table below, and can be found by calculating the difference in the bolded numbers in the Anticipated Balance and Required Balance columns.**

## Expected Escrow Account Transactions

The following chart shows the amounts we expect to deposit into and pay out of your escrow account during the next escrow cycle, as well as the required balance for each month. These projections are based on the most recent bills paid from your escrow account. The actual amounts billed by your insurance company and by your taxing authority in the upcoming year may be different and could result in changes to your monthly mortgage payment when your escrow account is reviewed in the future. If you become aware of a change to your taxes or insurance, you may wish to contact Midland to have your escrow account reviewed to avoid a large shortage or surplus in the future.

| MONTH-YEAR | EXPECTED PAYMENTS TO ESCROW | EXPECTED PAYMENTS FROM ESCROW | DESCRIPTION | ANTICIPATED BALANCE | REQUIRED BALANCE |
|---|---|---|---|---|---|
| | | | Starting Balance | $1,179.24 | $1,252.33 |
| Dec-21 | $626.15 | $0.00 | | $1,805.39 | $1,878.48 |
| Jan-22 | $626.15 | $0.00 | | $2,431.54 | $2,504.63 |
| Feb-22 | $626.15 | -$1,456.72 | CITY/TOWN TAX | $1,600.97 | $1,674.06 |
| Mar-22 | $626.15 | $0.00 | | $2,227.12 | $2,300.21 |
| Apr-22 | $626.15 | $0.00 | | $2,853.27 | $2,926.36 |
| May-22 | $626.15 | -$1,456.72 | CITY/TOWN TAX | $2,022.70 | $2,095.79 |
| Jun-22 | $626.15 | $0.00 | | $2,648.85 | $2,721.94 |
| Jul-22 | $626.15 | $0.00 | | $3,275.00 | $3,348.09 |
| Aug-22 | $626.15 | -$1,521.41 | CITY/TOWN TAX | $2,379.74 | $2,452.83 |
| Sep-22 | $626.15 | -$1,557.57 | HAZARD | $1,448.32 | $1,521.41 |
| Oct-22 | $626.15 | $0.00 | | $2,074.47 | $2,147.56 |
| Nov-22 | $626.15 | -$1,521.41 | CITY/TOWN TAX | $1,179.21 | $1,252.30 |
| Total | $7,513.80 | -$7,513.83 | | | |

## Escrow Account History

This chart shows the estimated and actual activity in your escrow account from 12/1/20 through 9/1/2021. If the servicing of your loan recently transferred to Midland or your loan was analyzed within the last 12 months the table below may be blank or show a history of less than 12 months. If the last escrow account statement provided by Midland was issued to you more than 12 months ago, additional months of transaction history for transactions more than 12 months in the past is included on page 5 of this statement. The previously required minimum balance and the actual minimum balance reached are indicated by bold font in the chart below.

| MONTH-YEAR | PAYMENTS TO ESCROW | | PAYMENTS FROM ESCROW | | | | ESCROW BALANCE | |
|---|---|---|---|---|---|---|---|---|
| | Estimated | Actual | Estimated | Description | Actual | Description | Estimated | Actual |
| | | | | | Starting Balance | | $1,226.32 | -$11,635.14 |
| Dec-20 | $613.13 | $597.46 | $0.00 | | $0.00 | | $1,839.45 | -$11,037.68 |
| Jan-21 | $613.13 | $0.00 | $0.00 | | -$1,456.73 | CITY/TOWN TAX* | $2,452.58 | -$12,494.41 |
| Feb-21 | $613.13 | $0.00 | -$1,433.09 | CITY/TOWN TAX | $0.00 | | $1,632.62 | -$12,494.41 |
| Mar-21 | $613.13 | $0.00 | $0.00 | | $0.00 | | $2,245.75 | -$12,494.41 |
| Apr-21 | $613.13 | $0.00 | $0.00 | | -$1,456.72 | CITY/TOWN TAX* | $2,858.88 | -$13,951.13 |
| May-21 | $613.13 | $600.24 | -$1,433.09 | CITY/TOWN TAX | $0.00 | | $2,038.92 | -$13,350.89 |
| Jun-21 | $613.13 | $1,197.70 | $0.00 | | $0.00 | | $2,652.05 | -$12,153.19 |
| Jul-21 | $613.13 | $0.00 | $0.00 | | -$1,521.41 | CITY/TOWN TAX* | $3,265.18 | -$13,674.60 |
| Aug-21 | $613.13 | $600.24 | -$1,523.90 | CITY/TOWN TAX | -$1,557.57 | HAZARD* | $2,354.41 | -$14,631.93 |
| Sep-21 | $613.13 | $597.46 | -$1,443.64 | HAZARD | $0.00 | | $1,523.90 | -$14,034.47 |
| Total | $6,131.30 | $3,593.10 | -$5,833.72 | | -$5,992.43 | | | |

* The single asterisk indicates a difference in the amount or date of the estimated and actual payouts from escrow.

## Paying the Shortage

There is a shortage in your escrow account, which will be collected over the next 12 months with your monthly mortgage payment. There are no additional fees or interest to pay the shortage amount over the next 12 months.

Your escrow shortage of $73.09 will be repaid by adding $6.09 to your next 12 monthly payments. This amount is automatically included in your new monthly payment of $1,437.93 beginning 12/1/2021.

**No action is required by you.**

## What if I have enrolled in an Automatic Payment Plan?

- If you use Midland's Automatic Payment Plan, we will automatically adjust your payment withdrawal amount.
- If you use an automatic payment program other than Midland's, please contact your payment administrator and ask them to update your payment to the new amount.

## Worried About Payments?

If you are struggling to pay your monthly payment, please call us at 1-800-552-3000 Monday through Friday from 8 a.m. until 9 p.m. (Central Time) to discuss your account and the options that may be available to help you.

You can also visit us online at www.MyMidlandMortgage.com/applynow to get an application for assistance.

**Please review the reverse side of this statement for helpful answers to common escrow questions.**

## Frequently Asked Escrow Account Questions

**Q1  What is an escrow account?**

Part of your monthly mortgage payment includes an amount for your loan's principal and/or interest, but it also includes an amount for property-related expenses (such as property taxes, insurance, and other items required by your loan documents). These amounts are deposited into an escrow account associated with your mortgage loan. With an escrow account, you pay a portion of your property taxes, insurance, and other items required by your loan documents every month instead of once or twice a year.

**Q2  Why did Midland change my monthly mortgage payment amount?**

Midland does not change your principal and interest monthly payments unless you have an adjustable interest rate mortgage loan or an interest-only period on your loan. Increases or decreases to the escrow portion of your monthly mortgage payment are usually because of changes in your taxes or insurance.

**Property Taxes:** Your property taxes may change when your property is reassessed, when the applicable tax rate changes, or when a special tax or assessment is charged by your local taxing authority. Contact your local taxing authority if you have questions about changes to your property taxes.

**Homeowner's and Flood Insurance:** Your premium for insurance covering your property can change when your coverage changes or if the rate that your insurance company charges for your coverage changes. Contact your insurance carrier or agent with questions about your insurance coverage and the cost of your coverage. You may also contact our Insurance Service Center at 1-866-439-2712 to discuss any changes in your insurance bills and your options.

**Q3  How often will my escrow payment change?**

Your monthly escrow payment, and thus your monthly mortgage payment, may change at least once a year when we review your escrow account as required by federal and state law. Your escrow payment might be recalculated more than once a year if there are substantial changes in your escrow bills (for example, you obtain homeowner's insurance at a reduced rate or you receive an exemption from paying the full amount of your property taxes).

**Q4  Will my automatic payments change to cover my new payment amount?**

If you use Midland's Automatic Payment Plan, we'll automatically adjust the withdrawal amount to the new payment amount upon its effective date. If you use an automatic payment program other than Midland's, please contact your payment administrator and ask them to update your payment to the new amount.

**Q5  What should I do if I think my escrow bills are wrong?**

You should verify billing amounts with your insurance carrier or taxing authority if you believe your escrow account has been charged incorrectly. If the amounts have changed, provide Midland with proof of the change from the taxing authority or insurance carrier so that we can adjust your escrow payment accordingly.

**Q6  What are my options if my payment increased and I can't afford a higher mortgage payment?**

If a payment increase causes a financial hardship and you cannot afford the larger monthly mortgage payment, call us at 1-800-552-3000 to discuss mortgage assistance options that may be available to you.

## Visit www.MyMidlandMortgage.com/Escrow for additional helpful answers to frequently asked escrow questions or contact us at 1-800-654-4566.